IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| CIRCLE Y OF YOAKUM, TEXAS, | : | Chapter 7 |
| | : | |
| Debtor. | : | Case No. 03-12465 (MFW) |
| | : | |
| _____ | : | |
| JEOFFREY L. BURTCH, | : | |
| CHAPTER 7 TRUSTEE, | : | |
| | : | Adv. Pro. No. 05- |
| | : | 52254(MFW) |
| Plaintiff, | : | |
| | : | Re: Docket Nos. 12 and 13 |
| v. | : | |
| | : | |
| STEPHEN G. DENT, | : | |
| | : | |
| Defendant. | : | |

**RESPONSE OF CHAPTER 7 TRUSTEE TO DEFENDANT'S MOTION TO WITHDRAW
THE REFERENCE OF THE ADVERSARY PROCEEDING FROM THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

Jeoffrey L. Burtch, the Chapter 7 Trustee (the "Trustee" and/or "Plaintiff") for the estate of Circle Y of Yoakum, Texas, Inc., *et al.,* (the "Debtor", the "Estate" and/or "Circle Y"), Plaintiff in this adversary proceeding, by his undersigned attorneys, submits this response to the motion(the "Motion")of Defendant Stephen G. Dent(the "Defendant"), and, in support thereof, avers as follows:

1. The Trustee does not object to the Motion to withdraw the reference and agrees that such withdrawal may be appropriate as a result of Defendant's jury demand and its unwillingness to have the matter tried in the Bankruptcy Court.  However, it is

the Trustee's position, based on Third Circuit and other case law, that the Bankruptcy Court may and should continue to preside over the case throughout the pre-trial period, including discovery, until such time as the case is ripe for trial.

2.  In cases in which a jury-trial demand has been made by a defendant, and in which, therefore, the reference to the Bankruptcy Court has been or will be withdrawn by the District Court, the Bankruptcy Court may continue to preside over the case up until trial, or, at least, throughout the discovery process. "[Defendant's] right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court."  *Wakefern Food Corp. v. C & S Wholesale Grocers, Inc. In re Big V Holding Corp.*, 2002 WL 1482392, *6 (D.Del. 2002)(A copy of which is attached hereto as Exhibit A).

**The Bankruptcy Court should preside over the instant Adversary Proceeding until the matter is ripe for a Jury Trial.**

3.  "[C]ourts in this district and elsewhere have held that even when a District Court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not 'preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial.'" *General Electric Capital Corporation v. Teo*, 2001 WL 1715777 (D.N.J. 2001) (a copy of which is attached hereto as

Exhibit B), *5, citing *In re Lands End Leasing, Inc.*, 193 B.R. 426, 436 (Bankr.D.N.J. 1996), citing *In re Keane Corp.*, 182 B.R. 379, 385 (S.D.N.Y. 1995) (denying on ripeness grounds motion to withdraw reference, reasoning that while an adversary proceeding carrying the right to a jury trial is in its initial stages, the bankruptcy judge is "fully equipped with the tools to proceed with [the] matter" until such time as the issues are ripe for submission to the jury).  See also *Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D.Tex. 1995) (The inability of a bankruptcy judge to preside over a jury trial absent the parties' consent does not require withdrawal of the reference to the bankruptcy court until it is clear that the issues are ready for consideration by a jury); *In re Northwestern Institute of Psychiatry, Inc.*, 272 B.R. 104, 111 (E.D.Pa. 2001) ("This court has the option at this point of withdrawing the entire adversary matter, or withdrawing only the trial portion, leaving the pre-trial and discovery matters to be handled by the bankruptcy judge").

    4.   Thus, while withdrawal of the reference in this case may eventually be appropriate, the Trustee respectfully submits that there is ample support for this Court to retain jurisdiction over the case pending trial.

**All Causes of Action Alleged in the Complaint Constitute Core Matters Pursuant to 28 U.S.C. § 157(b)(2)(A),(F) and (O).**

5.   Pursuant to 28 U.S.C. § 157(b)(2)(A),(F) and (O), all Plaintiff's causes of action in the case at bar constitute "core" matters.  Plaintiff specifically objects to Defendant's characterization of Plaintiff's Section 544 of the Bankruptcy Code cause of action as "non-core."  This Court, in the matter of *In re AstroPower Liquidating Trust*, 335 B.R. 309,329 Bankr.D.Del, 2005), ruled that fraudulent transfers pursuant to Sections 544 and 548 of the Bankruptcy Code were core matters ("The Plaintiff argues that this Court is the only adequate forum because resolution of the instant dispute will require litigation of **core fraudulent transfer claims**." (Emphasis added) In such matter, Count I of the Complaint was a 548 claim and Count II was a 544 Claim; together the Court characterized such claims as the "core fraudulent transfer claims.").  Based upon the foregoing, the Trustee believes, and therefore avers, that all the matters in the instant Complaint constitute "core" matters pursuant to to 28 U.S.C. § 157(b)(2)(A),(F) and (O).

WHEREFORE, for the foregoing reasons the Trustee requests that this Court retain jurisdiction over pretrial matters, including discovery, pending trial regardless of whether the reference is withdrawn now or at the time of trial.

```
                                    COOCH AND TAYLOR


                                     /s/ George R. Tsakataras
                                    George R. Tsakataras (#3911)
                                    824 Market Street, Suite 1000
                                    P.O. Box 1680
                                    Wilmington, DE   19899-1680
                                    Telephone: (302) 652-3641
                                    Fax: (302) 652-5379
                                    E-mail: gtsakataras@ctlaw.org
                                    Attorney for Jeoffrey L. Burtch,
                                    Chapter 7 Trustee
Date:  March 9, 2006
```

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d    Page 1
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
In re: BIG V HOLDING CORP., et al., Debtors.
WAKEFERN FOOD CORP., Plaintiff,
v.
C & S WHOLESALE GROCERS, INC., Defendant.
No. 00-04372(RTL), 01-758, CIV.A.
01-233(GMS).

July 11, 2002.

After cooperative member filed for Chapter 11 relief, food cooperative wholesaler filed state court action alleging that competitor tortiously interfered with its contractual relations with member. After case was removed to bankruptcy court, creditors' committee moved to withdraw reference to bankruptcy court. The District Court, Sleet, J., held that: (1) creditors' committee had unconditional right to intervene, and (2) withdrawal of reference was not warranted.

Motion denied.

West Headnotes

**[1] Bankruptcy** ⚷2160
51k2160 Most Cited Cases
Creditors' committee had unconditional right to intervene in food cooperative wholesaler's non-core adversary proceeding against competitor for tortious interference with its contractual relations with debtors, where suit sought injunction against Chapter 11 debtors' supply agreement with competitor. 11 U.S.C.A. § 1109(b); Fed.Rules Civ.Proc.Rule 24(a)(1), 28 U.S.C.A.

**[2] Bankruptcy** ⚷2103
51k2103 Most Cited Cases
Withdrawal of reference to bankruptcy court was not warranted in food cooperative wholesaler's non-core adversary proceeding against competitor for tortious interference with its contractual relations with debtors, even though wholesaler had right to jury trial, where bankruptcy court had already issued declaratory judgment in adversary proceeding that was factually and legally interrelated with action, and wholesaler had not yet officially filed jury demand. 28 U.S.C.A. § 157(b)(1).

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On November 22, 2000, the Debtors, Big V Holding Corp., et al., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to 28 U.S.C. § 157(a), the bankruptcy cases were referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). [FN1] Since the petition date, the Debtors have continued in possession of their properties and the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 6, 2000, an Official Committee of Unsecured Creditors ("the Creditors' Committee") was appointed by the United States Trustee pursuant to § 1102 of the Bankruptcy Code. Presently before the court is the Creditors' Committee's March 20, 2001 motion to withdraw the reference to the Bankruptcy Court. Since Wakefern has yet to assert a proper jury demand, and since considerations of judicial economy favor leaving the adversary proceeding in the Bankruptcy Court until it is ready for trial,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 2
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

Wakefern's motion to withdraw the reference will be denied at this time.

> FN1. Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

## II. FACTS

Wakefern Food Corporation ("Wakefern"), the plaintiff in this adversary proceeding (the "C & S Action"), is a food cooperative wholesaler that centralizes the purchasing of inventory and supplies for its members. The Debtors have been a member of the Wakefern cooperative since 1959. Pursuant to the stockholder agreement and by-laws governing Wakefern members, the Debtors are obligated to purchase approximately 85% of their products from Wakefern.

On August 3, 2000, the Debtors decided that their continued participation in Wakefern was detrimental to their business and, as a result, entered into a supply agreement with C & S Wholesale Grocers, Inc. ("C & S"), a direct competitor of Wakefern. On November 28, 2001, six days after the Debtors filed for relief under chapter 11, Wakefern filed suit against C & S in New Jersey state court. The complaint alleged that C & S, by executing an agreement with the Debtors, had engaged in tortious interference with Wakefern's contractual relations and had aided and abetted the Debtors' breach of fiduciary duty. The complaint seeks preliminary and permanent injunctions as well as damages. The C & S Action was removed to the United States Bankruptcy Court for the District of New Jersey and was subsequently transferred to the United States Bankruptcy Court for the District of Delaware, the Honorable Raymond T. Lyons presiding. [FN2]

> FN2. Judge Lyons is a visiting United States Bankruptcy Judge from the District of New Jersey.

On March 20, 2001, Wakefern filed a motion to withdraw the reference of the C & S Action to the Bankruptcy Court. C & S objected, arguing that Wakefern had failed to make a simultaneous motion to the Bankruptcy Court for a determination of whether the C & S Action was a "core" or "non-core" proceeding as required by Delaware Local Bankruptcy Rule 5011-1. On May 25, 2001, the Bankruptcy Court issued an order designating the C & S Action as a "non-core" proceeding. Therefore, C & S withdrew its objection to Wakefern's motion to withdraw the reference. The Debtors and the Creditors' Committee, however, have continued to oppose the motion. On January 31, 2001, the Creditors' Committee filed a motion to intervene in the C & S Action, which was granted by the bankruptcy court on February 15, 2001. The court has no record of a motion to intervene being filed by the Debtors.

*2 Central to the C & S Action is the Debtors' termination of the Wakefern supply agreement and execution of the C & S Supply agreement. Before proceeding with the C & S supply agreement, the Debtors sought a declaratory judgment from the Bankruptcy Court in order to determine whether the Debtors would owe a large withdrawal payment to Wakefern if they proceeded with the C & S supply agreement. On September 14, 2001, in *Big V Supermarkets, Inc. v. Wakefern Food Corp.*, 267 B.R. 71, 111 (Bankr.D.Del.2001), the Bankruptcy Court held that the Debtors would be obligated to make the withdrawal payment. The Bankruptcy Court also made specific findings as to what would constitute a breach of good faith and fair dealing with regards to the Debtors' attempts to abandon the Wakefern supply agreement.

Apart from the declaratory judgment action, the Bankruptcy court has presided over numerous scheduling and pretrial conferences and disputes, including Wakefern's February 9, 2001 motion to compel the Debtors' assumption/rejection of the Wakefern Agreement and C & S's March 28, 2001 motion to dismiss, or in the alternative, to stay proceedings. In sum, the C & S Action is intertwined with several proceedings and matters which are or were before the Bankruptcy Court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 3
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

Furthermore, Bankruptcy Court Judge Lyons stated that he believes the C & S Action should be adjudicated together with the other actions relating to the bankruptcy case. During a March 28, 2001 scheduling conference, Judge Lyons stated, "I think this is a three party dispute that should be dealt with together."

One final fact is crucial to the court's analysis of Wakefern's motion. To date, Wakefern has not made any formal demand for a jury trial. However, Wakefern has indicated that they plan to file an amended complaint with the formal jury trial demand after the court decides this motion to withdraw the reference. Wakefern refuses to file the amended complaint for fear that filing a claim in the Bankruptcy Court could constitute consent to the jurisdiction of the Bankruptcy Court and consequently, waiver of the right to a jury trial.

III. DISCUSSION

A. Intervention

Neither the Debtors or the Creditors' Committee are parties to the C & S Action. Therefore, in order for their objection to be heard, they must have properly intervened in the adversary proceeding.

Federal Rule of Civil Procedure 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Both the Debtors and the Creditors Committee believe that they have an unconditional right to be heard under 11 U.S.C. § 1109(b), which states, in part, "A party in interest, including the debtor, ... [or] a creditors' committee ... may raise and may appear and be heard on any issue in a case under this chapter." Wakefern argues that the C & S Action, an adversary proceeding, is not a "case under this chapter" as required by the statute. Although the circuits are split on whether section 1109(b) confers an unconditional right to intervene, [FN3] the Third Circuit has taken a clear position on the issue. In *Phar-Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1241 (3d Cir.1994), the Third Circuit held that section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

> FN3. The Fourth, Fifth, and Eleventh Circuits have held that § 1109(b) does not create an absolute right of intervention in any adversary proceedings, not even those that are brought "under" chapter 11. See *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1286- 1287 (5th Cir.1985); *In re Charter Co.,* 876 F.2d 866, 871 (11th Cir.1989); *Matter of Richman,* 104 F.3d 654, 658 (4th Cir.1997).

*3 [1] A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered. See *Halper v. Halper,* 164 F.3d 830, 837 (3d Cir.1999). The complaint in the adversary proceeding between Wakefern and C & S seeks an injunction against the Debtors' supply agreement with C & S. Thus the adversary proceeding clearly affects the Debtors' estate and their ability to reorganize. Moreover, the procedural history of the C & S Action indicates that it is "related to" the bankruptcy. The proceeding was removed from state court pursuant to 28 U.S.C. § 1452(a), which allows a party to remove a cause of action that is "related to" a bankruptcy case. Furthermore, the C & S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a), which mandates that proceedings "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. Therefore, the C & S Action clearly satisfies the "related to" requirement.

Since the C & S Action is "related to" the bankruptcy, the *Phar-Mor* holding dictates that the Debtors and Creditors' Committee have an unconditional right to intervene under section 1109(b). [FN4] In the instant proceeding, the Creditors' Committee has properly filed a motion to intervene and has otherwise complied with the requirements for intervention pursuant to Rule 24(c). Therefore, since 11 U.S.C. § 1109(b) gives a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                Page 4
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

creditors' committee an unconditional right to intervene in light of *Phar-Mor,* the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1). [FN5]

> FN4. Bankruptcy Rule 7024, the sole Bankruptcy rule governing intervention in an adversary proceeding, merely adopts Federal Rule of Civil Procedure 24.
>
> FN5. Based upon the current record, the court has been unable to determine whether the Debtors have filed a timely motion to intervene. Therefore the Debtors will not be considered a proper intervenor in this proceeding for purposes of Wakefern's motion to withdraw the reference; however, the Creditors' Committee's opposition to the motion should adequately represent the interest of the Debtors.

B. Mandatory v. Permissive Withdrawal of the Reference

The C & S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). The procedure governing withdrawal of the reference to the Bankruptcy Court is stated in 28 U.S.C. § 157(d), which reads,

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce ." 28 U.S.C. § 157(d).

The first sentence of this statute describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. Since the C & S Action involves only state law tort and contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown." *See* 28 U.S.C. § 157(d).

As the movant in this case, Wakefern bears the burden to show cause. *NDEP Corp. v. Handl-It, Inc.,* 203 B.R. 905, 907 (D.Del.1996). The statute does not define "cause," but guideposts exist to elucidate the meaning of the word. The Third Circuit has stated that a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990). However, the "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp.,* 203 B.R. at 908. Relevant considerations might also include "the nature of the proceedings (*i.e.,* core or non-core) and judicial economy." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.,* 107 B.R. 34, 39 (D.Del.1989). Another factor which should be considered is "whether the parties have requested a jury trial." *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.,* 106 B.R. 367, 371 (D.Del.1989). The court will now consider these factors.

C. Factors to Consider in Determining Whether to Withdraw the Reference

1. Core v. Non-Core and Judicial Economy

*4 [2] There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. *See* 28 U.S.C. § 157(b)(1). Thus, a determination of whether the C & S Action is a core or non-core proceeding is crucial to the determination of the Creditors' Committee's motion. In an Order dated May 25, 2001, the Bankruptcy Court declared that the current adversary proceeding is non-core. No party has challenged the Bankruptcy Court's ruling, therefore, the court concludes the C & S Action is a non-core proceeding.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

Moving to the question of judicial economy, the court believes the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, as set forth in *Pruitt,* 910 F.2d at 1168, would seem to be best served by leaving the C & S Action in the Bankruptcy Court. [FN6]

>   FN6. The court is aware that courts in this district have held that "judicial economy favors permissive withdrawal of the reference of a non-core proceeding, since the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law." *NDEP Corp.,* 203 B.R. at 908, (paraphrasing *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.,* 107 B.R. 34, 39 (D.Del.1989)). Given the facts and circumstances of this case, the court declines to follow this precedent.

The Bankruptcy Court is intimately familiar with the numerous complex issues surrounding the C & S Action. In fact, on September 14, 2001, the Bankruptcy Court issued a declaratory judgment in a separate adversary proceeding to this bankruptcy case which is interrelated with the C & S Action. *See Big v. Supermarkets, Inc.,* 267 B.R. 71. In that proceeding, the Bankruptcy Court held that Wakefern would be entitled to a withdrawal payment if the Debtors were to proceed with their supply agreement with C & S. *Id.* at 111. Furthermore, the Bankruptcy Court made specific findings as to what would constitute a breach of good faith and fair dealing with regard to the Debtors' attempts to abandon the Wakefern supply agreement. *Id.* Thus, it is apparent that the Bankruptcy Court is very familiar with the facts and issues which are crucial to the determination of the C & S Action. Specifically, the Bankruptcy Court has become familiar with important provisions of Wakefern's By-Laws and Stockholders' Agreement, all of which are crucial to the C & S Action. In sum, the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the C & S Action. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court. *See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co.,* 272 B.R. 104, 109 (E.D.Pa.2001) ("The bankruptcy court is familiar with the parties, the factual background of the case and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court").

2. Right to a Jury Trial

The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a special designation of jurisdiction by the district court, the Bankruptcy Court may not hold a jury trial in a non-core proceeding. *See* 28 U.S.C. § 157(e).

*5 It is clear that Wakefern has a constitutional right to a jury trial in this case. The Seventh Amendment states, "In Suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..." U.S. CONST. amend. VII. In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court explained that "suits at common law" referred to controversies in which legal rights were to be determined, as distinguished from cases in which only equitable rights were recognized and only equitable remedies were administered. Furthermore, the Court stated that the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. *Id.* at 42 n. 4. The C & S Action, a contract and tort action for damages, is clearly legal in nature and involves a matter of private right. *See NDEP Corp.,* 203 B.R. at 909.

However, although Wakefern has a right to a jury trial of the C & S Action, a proper jury demand has not been made. Wakefern has stated that upon the court's determination of this motion to withdraw the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 6
Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)
**(Cite as: 2002 WL 1482392 (D.Del.))**

reference, it will file the amended complaint containing a demand for a jury trial. While Wakefern's intention to formally demand a jury trial is duly noted, the fact remains that they have not yet done so. Wakefern is reluctant to file an amended complaint with a jury demand because it believes, not without reason, that filing an amended complaint could quite possibly constitute waiver of their Seventh Amendment right to have their claims tried by jury. *See Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1250-1253 (3d Cir.1993) (identifying two theories whereby courts have divested parties of their rights to a jury in the bankruptcy context. Under the "waiver theory," a party can lose its right to a jury trial by voluntarily submitting to the jurisdiction of the bankruptcy court through the filing of a petition or claim in the bankruptcy court).

Although Wakefern may be entitled to a jury trial, their potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time. Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See In re Northwestern Institute of Psychiatry, Inc.,* 268 B.R. 79, 84 (E.D.Pa.2001) (citing *In re Commercial Financial Services, Inc.,* 239 B.R. 586, 596 (N.D.Okla.1999); *see also Barlow & Peek, Inc. v. Manke Truck Lines, Inc.,* 163 B.R. 177, 179 (D.Nev.1993) (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence"). It would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future. At the present time, the case is not ready for trial. Assuming that Wakefern does file the amended complaint containing a proper jury demand, a jury trial may not be necessary in order to resolve the C & S Action. During the March 28, 2001 scheduling conference in connection with the C & S Action, Bankruptcy Court Judge Lyons stated that this case "cries out for settlement." Until Wakefern properly asserts their right to a jury trial, the C & S Action should remain in the Bankruptcy Court.

*6 The court is persuaded that Wakefern's right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court. Until that time, the bankruptcy judge can serve basically the same function as a magistrate. *See In re Delaware and Hudson Ry. Co.,* 122 B.R. 887, 897 (D.Del.1991).

IV. CONCLUSION

In this case, judicial economy weighs heavily in favor of leaving the C & S Action in the Bankruptcy Court, since that court has already issued a declaratory judgment in an adversarial proceeding which is factually and legally interrelated with the C & S Action. Withdrawal of the reference at this point based on Wakefern's right to a jury trial would be premature, since Wakefern has yet to officially file a jury demand.

The court will deny Wakefern's motion to withdraw the reference, but will do so without prejudice. When the C & S Action is ready for trial, Wakefern may file a renewed motion to withdraw the reference.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Wakefern's request for withdrawal of the reference to bankruptcy is DENIED;
2. This denial is without prejudice to Wakefern's ability to renew its request for withdrawal of the reference at a later time, when a jury trial has been properly demanded and the case becomes ready for trial.

Not Reported in F.Supp.2d, 2002 WL 1482392 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00233 (Docket) (Apr. 09, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

**Westlaw.**

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)
**(Cite as: 2001 WL 1715777 (D.N.J.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
GENERAL ELECTRIC CAPITAL
CORPORATION, Plaintiff,
v.
Alfred TEO, Defendant.
**No. CIV. 01-CV-1686(WGB).**

Dec. 14, 2001.

Edward T. Dartley, Esq., John K. Sherwood, Esq., Lowenstein Sandler PC, Roseland, NJ, Kurt W. Hansson, Esq., Leslie A. Plaskon, Esq., Adrienne B. Alexander, Esq., Paul, Hastings, Janofsky & Walker LLP, Stamford, CT, for Plaintiff.

Peter R. Bray, Esq., Bray Chiocca Rothstadt & Miller, L.L.C., Parsippany, NJ, for Defendant.

OPINION

BASSLER, District Judge.

*1 Defendant Alfred Teo moves the Court to withdraw reference to the Bankruptcy Court of a tort action commenced against him by Plaintiff General Electric Capital Corporation ("GECC"). Given the common pre-trial issues that predominate this action and approximately 12 creditor preference proceedings currently pending before the Bankruptcy Court, the Court will dismiss Defendant's motion to withdraw reference without prejudice at this time. Defendant is granted leave to reinstate his motion after the Bankruptcy Court has concluded all pre-trial proceedings, and after the Bankruptcy Court has made a determination of whether the proceeding instituted by GECC against Defendant is core or non-core.

I. *BACKGROUND*

Zeta Consumer Products Corp. ("Zeta" or "Debtor") was in the business of manufacturing consumer and industrial plastic trash bags, cups, plates, and plastic housewares, at facilities throughout the United States. (Complaint ¶ 3). In the ordinary course of its business, Zeta would purchase and utilize certain raw materials, commonly referred to as Resins, in its manufacturing process. (*Id* .)

On April 25, 2000, Zeta filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. [FN1] Plaintiff GECC is a secured creditor in Zeta's bankruptcy action. GECC's claims against Zeta stem from revolving credit loans made to Zeta under a Loan and Security Agreement executed on May 8, 1998. (Complaint ¶ 8). As of April, 2000, Zeta allegedly owed GECC approximately $16.5 million under the Loan Agreement. (Complaint ¶ 10).

> FN1. Case No. 00-34148(NLW). That matter is currently pending before the Hon. Novalyn L. Winfield, United States Bankruptcy Judge.

The Loan from GECC to Zeta was secured in part by collateral that included "all of [Zeta's] personal property and assets, whether tangible or intangible, and whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest ..." (Complaint ¶ 12). This personal property included Zeta's Resin stockpiles, located at its facilities around the country. (Complaint ¶¶ 13, 17).

At the time Zeta became insolvent and sought bankruptcy protection, Defendant Alfred Teo was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2

Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)

**(Cite as: 2001 WL 1715777 (D.N.J.))**

Co-Chief Executive Officer, Secretary, and a director of Zeta. (Complaint ¶ 3). Defendant Teo is also an officer of Alpha Industries, Inc. ("Alpha"), and allegedly an officer of other companies, all of whom manufacture consumer and industrial plastic. (Complaint ¶ 4). Allegedly, these other companies acquire Resin from the same vendors who had supplied Resin to Zeta. (*Id.*)

Plaintiff contends that in April, 2000 Defendant Teo, knowing of Zeta's dire financial circumstances, directed the Resin vendors to reclaim the stockpiles of Resin that they had supplied to Zeta, "for the purpose, upon information and belief, of satisfying outstanding accounts with those vendors, to the frustration of GE Capital's security interest in those Resins. Upon information and belief, Defendant Teo directed the removal and/or return of such resins in order to maintain amicable business relationships with such vendors in furtherance of Teo's personal financial interests and for the benefit of Teo's other business ventures, including, but not limited to, Alpha." (Complaint ¶¶ 17-19). Plaintiff alleges that Defendant Teo engaged in the Resin transfers despite express language in the Loan and Security Agreement that required GECC's written consent before the liquidation of any assets. (Complaint ¶ 14). The transferred Resins were allegedly valued at approximately $2.6 million. (Complaint ¶ 22).

*2 After Debtor Zeta sought Chapter 11 protection, because of Teo's allegedly improper Resin transfers Plaintiff GECC commenced this adversary proceeding in the United States Bankruptcy Court for the District of New Jersey on February 28, 2001. [FN2] In its Adversary Complaint, GECC brought claims against Teo for Conversion, Breach of Fiduciary Duty, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, and Negligently Caused Economic Loss.

> FN2. Plaintiff contends that jurisdiction is proper before the Bankruptcy Court pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c). For reasons that will be subsequently detailed, the Court agrees.

According to Plaintiff, Defendant Teo's Resin transfers have been actively litigated in the bankruptcy case since its commencement in April, 2000. In addition to the Resin transfers allegedly having resulted in a reservation of rights as to recovery of collateral in a final order authorizing debtor-in-possession financing by GECC (Order attached as Ex. E to Dartley Decl.), Plaintiff contends that Teo's diversion of the Resins has prompted the Debtor to commence twelve adversary proceedings in the Bankruptcy Court against various vendors of the Resin, seeking recovery of preferences and/or fraudulent transfers. Discovery in at least eleven of these preference actions is still on-going.

In response to GECC's Adversary Complaint, on April 4, 2001 Defendant Teo filed an Answer and Affirmative Defenses with the Bankruptcy Court. Simultaneously, he asked the Bankruptcy Court to abstain from hearing the matter, and asked this Court to withdraw reference of the matter from the Bankruptcy Court. In his Answer, Defendant Teo expressly reserved the right to file a separate suit against Plaintiff or to file a counterclaim after his application for abstention or withdrawal of reference had been ruled on.

By letter, the parties asked this Court to delay consideration of the motion to withdraw reference until after the bankruptcy court had the opportunity to rule on Defendant's motion for abstention. At a hearing on June 4, 2001, Judge Winfield denied Defendant's request for abstention. (Transcript of June 4, 2001 Hearing attached as Ex. A to Plaintiff's Opposition to Withdrawal of Reference). After affirmatively declining to express an opinion on whether the reference of this matter ought to be withdrawn, (6/4/2001 Tr. 17:12-13), Judge Winfield found that there were no factors present that might support abstention.

After Judge Winfield's ruling, upon request this Court allowed the parties an additional period of time for briefing of the withdrawal of reference issue. The matter is now before the Court for decision.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3

Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)

**(Cite as: 2001 WL 1715777 (D.N.J.))**

II. *DISCUSSION*

When confronted with a bankruptcy dispute, a district court shall, pursuant to 28 U.S.C. § 157(a), refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." In keeping with § 157(a), 28 U.S.C. § 157(b)(1) provides that the merits of certain "core" bankruptcy matters may be heard and ruled on by the bankruptcy court. For other "non-core" matters that are related to bankruptcy proceedings but are not central to them, a bankruptcy judge may not enter judgment on the merits, but must instead enter proposed findings of fact and conclusions of law that are reviewed *de novo* by the District Court. 28 U.S.C. § 157(c)(1).

*3 A district court "may withdraw, in whole or in part, any case or proceeding referred under [§ 157] on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Pursuant to § 157(d), Defendant has asked the Court to withdraw reference of Plaintiff's action, so that the matter may be tried before a jury in this Court.

In his reply papers, Defendant Teo argues for the first time that the Bankruptcy Court lacks subject matter jurisdiction over this proceeding, and that as a result the Court should withdraw reference . [FN3] The Court can dispose of this argument in short order. For subject matter jurisdiction to exist before a Bankruptcy Court, there must exist some nexus between a "related" civil proceeding and the title 11 bankruptcy case. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1994), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 134-35 (1995). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.*

> FN3. It is uncontested that this Court would have diversity jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

In determining whether this proceeding is related to Zeta's bankruptcy, the Court finds several statements that were made before Judge Winfield to be of assistance. When setting the stage for why this dispute impacts Zeta's bankruptcy, Plaintiff's counsel stated that, "should G.E. succeed in this action, we believe the Committee would have grounds for equitably subordinating [Teo's] claim and possibly re-ordering the priorities in the claim distribution scheme ." (6/4/2001 Tr. 10:9-12). Plaintiff's counsel reached this conclusion because GECC "is basically suing Mr. Tao [sic] for diverting property of the estate which also happens to be GE's collateral. I don't know how much more related you can get to this case especially when you've got twelve pending resin actions." (6/4/2001 Tr. 16:14-18).

The Court agrees entirely with Plaintiff's reasoning. Based on the proof of claim Teo filed in the bankruptcy action, it appears to the Court that Defendant is the single largest creditor of Zeta. As Judge Winfield noted at the hearing, if Teo's claims were subordinated "there is a possibility that depending on how this matter adjudicates it could favorably effect the likelihood of recovery to the unsecured creditor class." (6/4/2001 Tr. 20:2-4). In such a circumstance, the Court must conclude that this matter is related to the underlying bankruptcy proceeding, and that as a result the Bankruptcy Court has jurisdiction to hear it. *Cf. In re Trans-end Technology, Inc.,* 1998 WL 404184 (Bankr.N.D.Ohio May 28, 1998)(failing to find jurisdiction over a third party adversary proceeding, but holding that it was "not a situation involving a third party action brought by a creditor against officers or shareholders of the Debtor which would impact the administration of the Debtor's Bankruptcy Estate"), *citing Traveler's Ins. Co. v. Goldberg,* 135 B.R. 788 (D.Md.1992)(creditor's actions against former general partners of debtor's general partner were related to the bankruptcy case where the resulting judgment would likely impact the estate's liability to remaining creditors); *In re Pal Nissan, Inc.,* 126 B.R. 966 (Bankr.N.D.Mich.1991)(holding that creditor's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)

**(Cite as: 2001 WL 1715777 (D.N.J.))**

conversion claims asserted against non-debtor shareholders of corporate debtor constituted a non-core "related" proceeding).

*4 Having concluded that the Bankruptcy Court *could* hear this matter, the Court must next determine whether the Bankruptcy Court *should* hear this matter. In guiding those district courts that have been asked to rule on motions to withdraw reference, the Third Circuit has opined that:

> the district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*In re Pruitt,* 910 F.2d 1160, 1168 (3d Cir.1990), *quoting Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985). In his initial moving papers, the only factors that Teo advanced to support withdrawing the reference of this matter were that the action commenced by GECC is a non-core proceeding, and that his right to a trial by jury would be violated if the matter were not withdrawn from the Bankruptcy Court.

Assuming for purposes of argument that GECC's action is a non-core proceeding, the Court is mindful that "[p]roceedings should not be withdrawn for the sole reason that they are non-core." *Katzev v. Dunavant,* 1997 WL 786461, *5 (E.D.Pa.1997), *quoting Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.,* 106 B.R. 367, 371 (D.Del.1989). Instead, "the 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.' " *Id* . (internal citations omitted); *see also Valley Forge Plaza Assoc. v. Fireman's Fund Ins. Cos.,* 107 B.R. 514, 518 (E.D.Pa.1989).

The only argument relied on by Defendant that rises to the level of a "contravening policy" is that failure to withdraw the reference of this matter would violate his Seventh Amendment right to a jury trial. The Third Circuit noted in *Beard v. Braunstein* that:

> The Seventh Amendment limitations on the review of jury findings are not compatible with section 157(c)(1), which requires that any contested finding by the bankruptcy court must be reviewed *de novo* . By the Seventh Amendment, any fact found by a jury cannot be reviewed *de novo.* Accordingly, a bankruptcy court cannot conduct a jury trial in a non-core proceeding.

914 F.2d 434, 443 (3d Cir.1990). Given the Third Circuit's clear prohibition on bankruptcy jury trials in non-core proceedings, assuming without deciding that Defendant has a valid right to a jury trial, Defendant's right would be violated if this Court declined to withdraw the matter, *and* if the matter were ultimately decided by the Bankruptcy Court on its merits without a jury.

Even though decisions in this district have held that a defendant's "showing that it is entitled to a jury trial which it would be unable to receive in a bankruptcy court ... is enough to establish 'cause' requiring withdrawal of reference," *In re System Freight, Inc.,* 1991 WL 33150, *4 (D.N.J. March 6, 1991), the mere fact that a Defendant has asserted a right to trial by jury is not sufficient to immediately justify withdrawal of an action from bankruptcy. The Second Circuit has suggested that:

*5 If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

*In re Orion Pictures Corp.,* 4 F.3d 1095, 1101-02 (2d Cir.1993). In keeping with this suggestion, courts in this district and elsewhere have held that even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not "preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *In re Lands End Leasing, Inc.,* 193 B.R. 426, 436 (Bankr.D.N.J.1996), *citing In re Kenne Corp,* 182 B.R. 379, 385

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 5
Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)
**(Cite as: 2001 WL 1715777 (D.N.J.))**

(S.D.N.Y.1995)(denying on ripeness grounds motion to withdraw the reference, reasoning that while an adversary proceeding carrying the right to a jury trial is in its initial stages, the bankruptcy judge "is fully equipped with the tools to proceed with [the] matter" until such time as the issues are ripe for submission to the jury), *and Hayes v. Royala, Inc.,* 180 B.R. 476, 477 (E.D.Tex.1995) (explaining that the inability of a bankruptcy judge to preside over a jury trial absent the parties' consent does not require withdrawal of the reference to the bankruptcy court until it is clear that the issues are ready for consideration by a jury).

Despite Defendant's demand for a jury trial, the Court concludes that GECC's action is best left before the Bankruptcy Court, at least until all pre-trial matters have been resolved. The Court reaches this conclusion because consideration of the *Pruitt* factors demonstrates that leaving the dispute before the Bankruptcy Court would promote uniformity in bankruptcy administration, reduce confusion, foster the economical use of the debtors' and creditors' resources, and most importantly expedite the bankruptcy process. Judge Winfield's own words provide evidence of this:

> I think also I would point out that I think this Court from a--I guess I would characterize it as a judicial economy point of view has probably the most familiarity with all of the proceedings in this case in addition to the preference suits and you can characterize them as you wish, but I mean the bottom line much of the factual basis is the same both for this suit and the preference suits. It's just the legal theories are different. Those are all known to the Court. I've already entered some scheduling orders in those. That issue has been present in the case for at least the last--I don't know--four to six months area. It's an area of great familiarity to the Court. I don't think it would be burdensome on this Court's docket to hear this related matter and recollect that this Court is obviously familiar with the bankruptcy proceeding in its entirety.
> *6 I also think there is a possibility that depending upon how this matter adjudicates it could favorably effect the likelihood of a recovery to the unsecured creditor class.

(6/4/2001 Tr. 19:12-20:4).

Because there is substantial factual overlap between this dispute and the twelve vendor preference suits currently pending in the Bankruptcy Court, resources would be conserved by engaging in coordinated discovery. Further, because this dispute has the potential to seriously impact the underlying bankruptcy proceedings, any orders issued in this dispute should be consistent with the orders entered by the Bankruptcy Court in the preference suits. Also, because final resolution of the merits of this suit might necessitate a reordering of the creditor priorities in the bankruptcy action, the Bankruptcy Court would be in a better position to shepard this dispute along, so that trial of this dispute can occur prior to final resolution of the bankruptcy proceeding. Lastly, because there exists the prospect that this dispute will be resolved prior to trial, Defendant's argument regarding his right to a trial by jury might eventually be mooted, thus defeating the sole argument asserted by Defendant in favor of withdrawal. Given all of these factors, and for other good cause shown by Plaintiff, the Court will deny Defendant's motion without prejudice, until such time as a jury trial becomes necessary.

Because the Court has essentially elected to put off final decision on withdrawal until another day, the question of whether this is a core or non-core dispute need not be resolved at present. The determination of whether the action against Teo is a core proceeding or a non-core proceeding will ultimately have to be resolved, however, because if the matter is a core proceeding then even if Teo's right to a jury trial persists, the Bankruptcy Court would be able to conduct a jury trial on the merits.

Although Plaintiff essentially conceded in its complaint that this proceeding is non-core, as mandated by 28 U.S.C. § 157(b)(3) a determination should initially be made by the Bankruptcy Court. [FN4] *See* Richard M. Cieri, Neil P. Olack, Joseph M. Witalec, *Protecting Technology and Intellectual Property Rights When a Debtor Infringes on Those Rights,* 8 Am. Bankr.Inst. L.Rev. 349, 371 (2000) ("Although the district court must decide the motion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)
**(Cite as: 2001 WL 1715777 (D.N.J.))**

to withdraw the reference under 28 U.S.C. § 157(d), the issue of whether the proceeding is core or non-core is determined in the first instance by the bankruptcy court. Accordingly, if a party seeks withdrawal of the reference on the basis that a proceeding is non-core, the district court may defer its determination of the withdrawal motion until the bankruptcy court first determines if the underlying action is core or non-core"); See also *Travelers International v. Robinson,* 982 F.2d 96, 97-98 (3d Cir.1992); *Dailey v. First Peoples Bank of Jersey,* 76 B.R. 963, 968-969 (D.N.J.1987); *Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp.,* 106 B.R. 367, 368 (D.Del.1989); *Mellon v. Delaware & Hudson Railway Co.,* 122 B.R. 887, 891 (D.Del.1991); *Young v. Snider,* 1994 U.S. Dist. LEXIS 2901 (E.D.Pa.1994).

> FN4. 28 U.S.C. § 157(b)(3) provides in relevant part:
> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

*7 Neither party asked the Bankruptcy Court to determine whether the suit commenced by Plaintiff is a core proceeding, although Plaintiff did suggest in its opposition brief to Defendant's withdrawal motion that the proceeding might be a core matter. After recognizing Plaintiff's suggestion that this might be a core dispute, the Bankruptcy Judge specifically declined to reach the issue, but did hint that the matter was likely not a core proceeding. [FN5]

> FN5. Judge Winfield had this to say at the hearing on June 4, 2001:
> It is my view as it sits here--as I said to counsel at the outset, I thought I would have a hard time keeping a straight face finding it to be a core proceeding but I didn't want to preclude them from arguing to the contrary and I don't know that we argued that issue.
> (6/4/2001 Tr. 22:5-9).

Judge Winfield's comments aside, if Defendant intends to re-submit his motion to withdraw reference prior to a jury trial, the Court would ask the Bankruptcy Court to first make a determination of whether the action commenced by Plaintiff is a core or non-core proceeding. This ruling will greatly speed the Court's eventual analysis of whether withdrawal for a final trial on the merits is ultimately warranted.

As a final matter, the Court will touch upon the question of whether Defendant will waive his right to a jury trial by filing a counterclaim against Plaintiff in the Bankruptcy Court. Some courts have suggested that a Defendant who objects to the Bankruptcy Court's jurisdiction in an adversary proceeding waives that objection by filing a counterclaim before the Bankruptcy Court. That result seems to be of concern to Defendant Teo, because he has elected to await this Court's ruling on the withdrawal issue prior to filing a counterclaim with the Bankruptcy Court.

Defendant Teo may rest assured that the Third Circuit embraced a rule that protects his jurisdictional objections when it held that a "defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim." *Beard v. Braunstein,* 914 F.2d 434, 442 (3d Cir.1990). Accordingly, even if Defendant Teo files a counterclaim with the Bankruptcy Court, he can still object to the Bankruptcy Court's jurisdiction over the merits of his claim, and seek withdrawal prior to trial so that this Court may try the matter before a jury.

That having been said, Defendant's objections to the Bankruptcy Court's jurisdiction might not be preserved forever. Plaintiff contends that because Defendant filed a proof of claim in the Zeta bankruptcy, he has submitted himself to the jurisdiction of the Bankruptcy Court and therefore has waived his right to a jury trial. Although the Court does not embrace such an expansive jurisdictional impact of the filing of a proof of claim, the Court notes that Defendant's proof of claim still may come to haunt him. If the Bankruptcy Trustee should join into Plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                           Page 7
Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)
**(Cite as: 2001 WL 1715777 (D.N.J.))**

action against Defendant, Defendant's right to a jury trial would likely be waived. The Court reaches this conclusion because of Supreme Court precedent to the effect that when a creditor submits a proof of claim against the estate, that creditor submits itself to the jurisdiction of the bankruptcy court as to disputes against the estate. *See In re Robert H. Kraeger Co.*, 1999 WL 342762, *6 (Bankr.E.D.Pa. May 24, 1999), citing *Langenkamp v. Culp*, 498 U.S. 42 (1990)(*per curiam*) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).

*8 Although the Court is unaware of any decision expanding the *Langenkamp* and *Granfinanciera* decisions to actions commenced in Bankruptcy Court against a creditor by a third party, the Court would welcome additional briefing on the issue should Defendant eventually elect to re-file his motion for withdrawal of reference.

III. *CONCLUSION*

Defendant's motion to withdraw reference to the Bankruptcy Court is dismissed without prejudice. The Court grants Defendant leave to reinstate his motion at the conclusion of all pre-trial proceedings, and after the Bankruptcy Court has had an opportunity to make an initial determination as to whether GECC's action is a core or non-core proceeding.

An appropriate order follows.

Not Reported in F.Supp.2d, 2001 WL 1715777 (D.N.J.)

**Motions, Pleadings and Filings (Back to top)**

• 2:01CV01686 (Docket) (Apr. 09, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.